UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GAYLA VONMILLER,

                    Plaintiff,

          v.

USAA GENERAL INDEMNITY
COMPANY, *et al.*,

                    Defendants.

Case No.: 2:25-cv-02132-MMD-NJK

ORDER

## I.    SUMMARY

In her First Amended Complaint, Plaintiff Gayla Vonmiller brought this auto insurance action against Defendant[1] USAA General Indemnity Company ("USAA GIC") alleging breach of contract, deceptive trade practices, negligence, and related claims arising from an attempt to obtain uninsured motorist benefits for a motor vehicle accident. (ECF No. 1-2 ("Complaint").) In particular, Plaintiff alleges that Defendant unreasonably and in bad faith failed to tender the UIM policy limits in response to her time-limited demands. (*See id.* at 6.) Before the Court is Defendant's motion to dismiss the Complaint.[2] (ECF No. 9 ("Motion").) Because Plaintiff failed to satisfy conditions precedent to coverage and for additional reasons discussed below, the Court will grant the Motion.

///

///

---

[1]The case caption of the complaint identifies "Does 1-25 and Roe Corporations 1-25" as Defendants. (ECF No. 1-1 at 2.) The complaint alleges that named Defendant USAA General Indemnity Company along with Doe and Roe Defendants' negligence caused Plaintiff to incur medical expenses. (*Id.* at 3, 8.)

[2]Plaintiff responded (ECF No. 12), and Defendant replied (ECF No. 15).

## II.  BACKGROUND

The following facts are adapted from the Complaint.[3] (ECF No. 1-2.) This action arises from a dispute over underinsured/uninsured motorist ("UIM") benefits and the Defendant-insurer's tendering of those benefits. At the heart of this dispute is when and whether UIM coverage under the insurance policy was triggered.

On March 18, 2025, Plaintiff was injured in a motor vehicle accident involving a negligent third-party "underinsured" driver. (*Id.* at 4, 6.) Plaintiff alleges she suffered "serious bodily injury, disability, and pain and suffering," incurring more than $250,000 in medical expenses from the accident, and sustaining general damages in excess of $15,000 as a "direct and proximate result" of Defendant's alleged delay in the claims handling process. (*Id.* at 6.) At the time of the accident, Plaintiff was insured under an automobile insurance policy (the "Policy") issued by Defendant, which provided UIM coverage with limits of $25,000 per person and $50,000 per accident. (*Id.* at 5; *see also* ECF No. 9-2 at 8.) The at-fault driver was insured under a separate policy with identical limits, which was tendered to Plaintiff in the amount of $25,000 on May 1, 2025. (ECF No. 1-2 at 5.)

Following the accident, on April 30, 2025, Plaintiff demanded a UIM policy limit payment from Defendant to cover medical expenses and other losses related to injuries she allegedly suffered as a result. (*Id.*) Plaintiff alleges that Defendant, in response, "failed

---

[3]Defendant requests the Court take judicial notice of the insurance policy (ECF No. 9-2) and related correspondence (ECF Nos. 9-1, 9-3), which Plaintiff incorporates by reference in her Complaint (ECF No. 1-2 at 5). (ECF No. 9 at 3, 5.) On a motion to dismiss under Rule 12(b)(6), the Court may consider materials "incorporated by reference" into the complaint and may take judicial notice of "matters of public record." *See Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may…consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). If the Court otherwise considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Accordingly, the Court takes judicial notice of the insurance policy as to its content, including the $25,000 per-person in bodily injury liability and $50,000 per-accident in underinsured/uninsured motorist coverage (ECF No. 9-2 at 8) and the correspondence between Plaintiff-insured and Defendant-insurer, as described below (ECF Nos. 9-1, 9-3).

to timely pay benefits" and "refused to make an adequate payment" under the Policy, "thereby breaching its contractual duty." (*Id.* at 6, 8.) Plaintiff further alleges that, on July 7, 2025, she provided information regarding her injuries and treatment, and that Defendant indicated the UIM claim was under review but, ultimately, did not tender the policy limits. (*Id.* at 5-6.) Plaintiff sent an additional demand on August 5, 2025, requesting payment of the UIM limits within ten days. (*Id.* at 6; *see also* ECF No. 9-3.)[4]

The correspondence[5] incorporated by reference in the Complaint reflects that, on July 24, 2025, Defendant requested additional documentation necessary to properly evaluate Plaintiff's UIM claim, including (1) proof that the at-fault driver's liability limits had been exhausted and a (2) copy of the tortfeasor's declarations page. (ECF No. 9-1 at 6.) Defendant's correspondence further stated that review would be incomplete until receipt of this documentation. (*Id.*) Defendant, however, contends that "Plaintiff did not provide the information requested by USAA GIC to confirm that underlying limits have been exhausted and, instead, rejected the request" before then filing this suit. (ECF No. 9 at 5.)

Plaintiff asserts six claims against Defendant for its alleged failure to tender the UIM policy limits: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) deceptive trade practices; (4) intentional infliction of emotional distress; (5) negligence; and (6) violation of Nevada's Unfair Claims Practices Act under NRS § 686A.310. (*Id.* at 7-13.) Plaintiff seeks, among other remedies, general, compensatory, special, and punitive damages. (*Id.* at 13.)

---

[4]In the Complaint, Plaintiff states: "On or about August 5, 2025, Plaintiff sent another request for payment of benefits, reiterating the fact that the tortfeasor carried a policy of $25,000, and requesting that Ms. Vonmiller's underinsured motorist limits of $25,000 be tendered within ten days." (ECF No. 1-2 at 6; *see also* ECF No. 9-3.) The Court incorporates by reference and takes judicial notice of this correspondence (ECF No. 9-3). *See Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[5]In the Complaint, Plaintiff states: "On or about July 24, 2025, USAA, acting through its agents, employees or representatives, requested a two-week extension to evaluate the request for payment of benefits." (ECF No. 1-2 at 5 (referencing ECF No. 9-1 at 3).) The Court also incorporates by reference and takes judicial notice of the correspondence (ECF No. 9-1). *See Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### III.  DISCUSSION

Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), primarily contending that Plaintiff's claims fail because Plaintiff did not comply with the Policy's conditions precedent to coverage (i.e., obligation to cooperate by providing proof of exhaustion of applicable underlying limits and exhaustion of the tortfeasor's policy). (ECF No. 9 at 2, 6, 8.) Defendant further argues that Plaintiff's deceptive trade practices claim is not cognizable in the insurance claims-handling context and that the Complaint fails to allege sufficient facts to support her unfair claims practices claim. (*Id.* at 13-16, 18-20.) Finally, Defendant contends that Plaintiff cannot bring claims for negligence or intentional infliction of emotional distress against her insurance carrier based on the conduct alleged. (*Id.* at 16-18.) For the reasons explained below, the Court agrees with Defendant and will consider these arguments in turn.

### A.    Failure To Satisfy a Condition Precedent – Claims 1 and 2

Generally, Nevada courts and the Ninth Circuit have upheld conditions precedent in an insurance contract. *See Goldman v. Vigilant Ins. Co.*, 632 F. Supp. 3d 1188, 1195 (D. Nev. 2022) (upholding legal-action clause in insurer's policy, barring insured from bringing legal action, including breach of contract and other claims, against insurer without first complying with all conditions of the policy); *see also Keller v. Fed. Ins. Co.*, 765 Fed. Appx. 271, 272 (9th Cir. 2019) (unpublished) (finding legal-action clause to be enforceable condition precedent to insurance suit). Likewise, the Nevada Supreme Court has held that "absent some countervailing reason, contracts will be construed from the written language and enforced as written" and that, to recover under a contract, a party must show that it has satisfied conditions precedent. *See Goldman*, 632 F. Supp. 3d at 1194 (quoting *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990); and citing *Clark Cnty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 95 n.21 (Nev. 2007)).

The parties dispute both whether the Policy required Plaintiff to exhaust certain conditions precedent to UIM coverage and whether she, in fact, satisfied those requirements. In the Complaint, Plaintiff alleges that Defendant breached its contractual

4

duties when it "failed to timely pay benefits under the underinsured/uninsured portion of the subject policy…" (ECF No. 1-2 at 8.) In its Motion, Defendant contends that, under the plain language of the Policy, UIM coverage is not triggered until the insured provides proof that all applicable "underlying limits" have been exhausted, including the tortfeasor's policy limits.[6] (ECF No. 9 at 8-9 (citing ECF No. 9-2 at 12 (the "exhaustion provision")).) Defendant maintains that it requested documentation of such—namely, proof of exhaustion and the tortfeasor's declaration page—but Plaintiff failed to provide the requested materials. (ECF No. 9 at 9.) Defendant also points to the "cooperation" provision of the Policy, which requires that an insured "cooperate with [] the investigation . . . of any claim or suit" and "promptly send [] copies of any notices or legal papers received in connection with a suit, accident, or loss" before benefits become due or suit may be filed. (*Id.* at 4 (citing ECF No. 9-2 at 50).)

In response, Plaintiff attempts to narrowly construe the Policy's language in her favor. Plaintiff counters that "the policy does not place the onus on Ms. Vonmiller to provide the exhaustion of limits, but only to cooperate with USAA in the investigation, settlement, or defense of any claim or suit" and that "language [requiring confirmation of the tortfeasor's policy limits and exhaustion of those limits] is not found specifically in the policy." (ECF No. 12 at 8-9.) However, as Defendant points out in its reply, the Policy requires compliance with all conditions precedent to coverage, including cooperating in the investigation of the UIM claim. (ECF No. 15 at 2-3.) The Court is thus unpersuaded by Plaintiff's argument. Even if the Policy is devoid of exact language requiring material "proof" of exhaustion, it unambiguously conditions both the availability of UIM benefits and the right to file suit on the insured's compliance with policy conditions, including "cooperation" with the insurer's investigation. It is reasonable to then assume that "cooperation" under the Policy encompasses providing information reasonably requested

[6]The Policy's "exhaustion provision" states the following: "When the accident involves underinsured motor vehicles, we will not pay until all other forms of insurance under all bodily injury and property damage liability bonds and insurance policies and self-insurance plans applicable at the time of the accident have been exhausted by payment of their limits." (ECF No. 9-2 at 12.)

by the insurer—such as confirmation of the tortfeasor's policy limits and exhaustion of those limits—to determine whether coverage has been triggered.

As to the bad faith claim, Defendant argues that dismissal is proper primarily because the claim is "improperly duplicative" of and "based upon the same conduct" underlying the breach of contract claim and because Defendant's conduct is not "unreasonable." (ECF No. 9 at 11-12; *see also* ECF No. 15 at 4.) Nevada law holds that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). Under Nevada law, insurers are subject to a covenant of good faith and fair dealing, a violation of which can result in bad-faith tort liability. *See, e.g.*, *Sharp Plumbing, Inc. v. Nat'l Fire & Marine Ins. Co.*, 633 F. App'x 441, 442 (9th Cir. 2016). Violations may occur when "the terms of a contract are literally complied with but one party ... deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). In the insurance context, a breach can occur when an insurer unreasonably refuses "to compensate the insured for a loss covered by the policy." *See Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) (internal citation and quotations omitted); *see also Rivas v. Gov't Employees Ins. Co.*, No. 2:20-CV-306, 2020 WL 3128596, at *2 (D. Nev. June 12, 2020). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016) (holding that defendant's conduct that was a "direct and actual breach" of the subject contract could not support the plaintiff's implied-covenant claim) (internal citations omitted).

Under its claim for breach of the implied covenant of good faith and fair dealing, Plaintiff alleges that Defendant committed bad faith by "repeatedly and continuously failing and refusing to pay to the Plaintiff the sum of money due and owing to Plaintiff under the above described policy of insurance." (ECF No. 1-2 at 9.) Although Plaintiff

6

insists that Defendant "acted in contravention of the spirit of the contract" (ECF No. 12 at 11), the Court finds the bad faith claim to be improperly based on the same conduct (i.e., "failure to timely pay benefits") alleged in the breach of contract claim. And, even absent this redundancy, the Court agrees that, as discussed above, Defendant's conduct is far from "unreasonable." (*See* ECF No. 9 at 11-12.)

Accordingly, the Court dismisses both Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims.

**B.      Deceptive Trade Practices and Unfair Claims Practices Act – Claims 3 and 6**

Plaintiff further alleges that Defendant violated Nevada's Deceptive Trade Practices Act ("NDTPA") under NRS § 598.0977[7] by "knowingly misrepresenting [her] legal rights, obligations, or remedies," as a "person with a disability." (ECF No. 1-2 at 9-10.) Defendant argues that: (1) Plaintiff fails to allege specific facts establishing that she qualifies as "disabled" under NRS § 598.0977; (2) the NDTPA does not apply to the insurance claims-handling process; and (3) even if the statute applies, Plaintiff fails to plead facts supporting a "knowing misrepresentation," including the "time," "place," "specific content," or "identities of the parties" to the alleged misrepresentation. (ECF No. 9 at 15-16.) Plaintiff counters that she has asserted a plausible NDTPA claim, that her allegations satisfy the "knowing" standard, that deceptive trade practices may arise in the insurance claims-handling process, and that she meets the statutory definition of a "person with a disability." (ECF No. 12 at 12-14.)

In Nevada, a deceptive trade practices claim "may be brought by any person who is a victim of consumer fraud." *See* NRS § 41.600(1). To state a claim for damages, a plaintiff must prove that "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009); *see also* NRS § 41.600(2)(e) (defining consumer fraud to include deceptive trade

---

[7]NRS § 598.0977 provides a private right of action for an "elderly person" or a "person with a disability" who "suffers damage or injury as a result of a deceptive trade practice."

practices listed in NRS §§ 598.0915 to 598.0925). To establish "causation," a plaintiff must allege that it relied on a material misrepresentation that caused the harm. *See Guerra v. Dematic Corp.*, No. 3:18-CV-0376-LRH-CLB, 2020 WL 5995496, at *2 (D. Nev. Oct. 8, 2020).

As mentioned, Plaintiff brings her deceptive trade practices claim under NRS § 598.0977. (ECF No. 1-2 at 9-10.) Under NRS § 598.0923(1)(b), "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly … [f]ails to disclose a material fact in connection with the sale or lease of goods or services." Here, Plaintiff's claim is premised on Defendant's handling of her insurance claim—namely, its investigation, evaluation, and alleged failure to timely tender benefits—rather than any conduct "in connection with the sale or lease of goods or services," as contemplated by the NDTPA. *See* NRS § 598.0923 (defining "deceptive trade practice"). The Court thus agrees that such post-transaction claims-handling conduct falls outside the statute's scope, which is directed at consumer transactions, not the adjustment and handling of insurance claims. (*See* ECF No. 9 at 14.) And, even assuming the statute did apply, Plaintiff fails to allege facts supporting a plausible inference of the who, what, when, or where's of a "knowing misrepresentation." Accordingly, Plaintiff's deceptive trade practices claim is dismissed.

As to the unfair claims practices claim, Defendant contends that Plaintiff recites "nearly word-for-word" "conclusory allegations" from subsection (e)[8] of the Nevada statute, which prohibits unfair practices in the claims-settlement process, without providing facts sufficient to plausibly support a violation. (ECF No. 9 at 18-19 (referencing ECF No. 1-2 at 12).) Defendant adds that the claim should be dismissed on the additional grounds that Plaintiff "failed to plead that any officer, director, or department head knew

---

[8]Under NRS § 686A.310(e), insurers may be held liable for "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear."

about any of the alleged statutory violations," as required under NRS § 686A.270[9]. (ECF No. 9 at 19.)[10] The Court agrees. Accordingly, the Court dismisses Plaintiff's third and sixth claims for relief.

### C.   Intentional Infliction of Emotional Distress and Negligence – Claims 4 and 5

Defendant next argues that Plaintiff's intentional infliction of emotional distress ("IIED") claim fails as a matter of law because Plaintiff does not adequately plead the required elements. (ECF No. 9 at 16-18.) In particular, Defendant contends that the Complaint does not "set forth sufficient facts" to suggest Defendant's conduct is so "extreme and outrageous" that it would be considered "utterly intolerable." (*Id.* at 16); *see also Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (1999) (defining the elements of a cause of action for IIED: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation."); *Churchill v. Barach*, 863 F. Supp. 1266, 1275 (D. Nev. 1994). Here, even construing the allegations in the Complaint in a light most favorable to Plaintiff and drawing all inferences in her favor[11], Plaintiff fails to allege conduct that rises to the level of "extreme and outrageous." *See, e.g.*, *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998).

As to the negligence claim, Plaintiff asserts that Defendant acted negligently by "refus[ing] to fairly and promptly evaluate [her] UIM claim." (ECF No. 1-2 at 11-12.)

---

[9]Under NRS § 686A.270, "No insurer shall be held guilty of having committed any of the acts prohibited by NRS 686A.010 to 686A.310 . . . unless an officer, director or department head of the insurer has knowingly permitted such act or has had prior knowledge thereof."

[10]Plaintiff's opposition concedes the following: "[A]dmittedly, Plaintiff did not specifically allege the knowledge of an individual required under NRS 686A.270." (ECF No. 12 at 18.)

[11]The Court takes as true all allegations of material fact in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996),

Defendant argues that this claim fails as a matter of law, in part, because any duties owed by an insurer arise "from the insurance contract and the [applicable] law," not from a general duty sounding in negligence. (ECF No. 9 at 17 (citing *Allstate Ins. Co. v. Miller*, 212 P.3d 318 (Nev. 2009)).) The Court agrees.

Under Nevada law, a plaintiff "cannot assert a duty owed for any negligence claim for relief unless they can allege a duty created outside of any alleged breach of a contractual duty." *See, e.g.*, *Est. of Rosales by & through Alvarado-Rosales v. Certain Underwriters at Lloyd's of London*, No. 2:20-CV-00598-KJD-VCF, 2021 WL 1579929, at *9 (D. Nev. Mar. 26, 2021). Plaintiff alleges no such duty here. Moreover, courts in this district have held that Nevada does not recognize a negligence cause of action against an insurer for the alleged wrongful denial or delay of benefits. *See, e.g.*, *Sierzega v. Country Preferred Ins. Co.*, No. 2:13-CV-1267-JCM-NJK, 2014 WL 1668630, at *3, *5 (D. Nev. Apr. 25, 2014) (holding that plaintiff's negligence claim against defendant-insurer for "refus[al] to pay the policy limit sooner" fails). Accordingly, the IIED and negligence claims are dismissed.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is further ordered that Defendant's motion to dismiss (ECF No. 9) is granted.

The Clerk of Court is directed to enter judgment in accordance with this Order and close this case.

DATED THIS 1st Day of May 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

10